UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
FILE NO.: 5:22-CT-03122-BO

| | | |
|---|---|---|
| TELLYS BEST, | ) | |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF LAW IN |
| | ) | SUPPORT OF |
| v. | ) | DEFENDANTS' MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| SGT. EZZELL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

NOW COME Defendants James Ezzell, James Roberts and Joe Edwards, ("Moving Defendants") through counsel pursuant to Rule 56 of the Federal Rules of Civil Procedure, and respectfully submit this memorandum in support of their motion for summary judgment. In support of the motion for summary judgment, Defendants state the following:

### STATEMENT OF THE CASE

On April 6, 2022, pro se Plaintiff Tellys Best ("Plaintiff" or "Best"), a state court inmate, commenced this action by filing a Complaint pursuant to 42 U.S.C. § 1983 [D.E. 1] In the operative amended complaint, Plaintiff asserts Eight Amendment constitutional claims against Defendants James Ezzell, James Roberts and Joe Edwards and more specifically asserts that Defendants failed to protect Plaintiff from an attack by another inmate. [D.E. 1 at 5]

On December 12, 2022, Defendants filed an Answer to the operative Complaint

and raised multiple defenses in this matter. [D.E. 21]

On December 16, 2022, the Court entered a Case Management Order regarding planning and scheduling establishing deadlines for completion of discovery and for the filing of dispositive motions. [D.E. 22] Defendants now file their Motion for Summary Judgment.

## STATEMENT OF FACTS

*Plaintiff's Allegations*

Plaintiff's allegations, in the Complaint are that Defendants James Ezzell, James Roberts and Joe Edwards violated his Eighth Amendment rights by failing to protect him on August 14, 2021 from an incdent with Offenders Demarcus Magnum and Lawrence Miller. ("Magnum and Miller Incident") [D.E. 1 at 5-7] Back in July, 2021, Plaintiff Best, and Offender Elroy Price had been fighting in the Delta A-Block. Plaintiff Best had obtained a shank and ran up on Offender Elroy Price and stabbed Price with a shank in the face. ("Price Incident")

Plaintiff alleges that while he was in segregation for the Price Incident he alleges he was informed by Defendant Ezzell and Defendant Roberts "that his life was in danger" from that inmate. *Id.*

Plaintiff alleges that he forced back into regular population by Defendant Edwards even after informing Edwards what he was allegedly told by Defendants Ezzell and Roberts. *Id.* Plaintiff alleges that he was told by Defendant Edwards that if he did not leave segregation he would receive another disciplinary offense and be placed in restrictive housing again. *Id.*

After leaving segregation and placed in regular population Plaintiff alleges that he was assaulted by two prisoners. *Id.* These two prisoner were different from the one Plaintiff had fought which placed him in restrictive housing. Plaintiff alleges that the named Defendants displayed a "reckless disregard" for his safety for failing to act "reasonably to danger" *Id.*

<strong><u>Defendants Forecast of Evidence –</u></strong>

<u>**First Altercation**</u>

On July 11, 2021, at approximately 1204, Plaintiff Tellys Best was in an altercation with Offender Price in the Delta A-Block. (Edwards Decl. ¶10) The two offenders had been fighting just before and Plaintiff Best obtained a shank and ran up to Offender Elroy Price in the middle of the dayroom striking offender price in the facial area with the shank. (Edwards Decl. ¶) This incident resulted in Offender Price having left eye appear to almost fall out of the eye socket. Offender Price was sent to the Emergency Room and Offender Best – was sent to segregation for 30 days.

<u>**During Segregation**</u>

While Plaintiff was in segregation for stabbing Offender Price he was interviewed by James Ezzell and James Roberts who were working as gang/security risk group ("SRG") officers at the facility. (Edwards Decl. ¶4) Plaintiff Tellys Best is a level three SRG gang member which is the highest level. Ezzell and Roberts spoke with Plaintiff to gather information and to determine whether the assault and altercation were gang related. During the conversation, Plaintiff Best was uncooperative and refused to provide any information. Plaintiff insisted that Ezzell

and Roberts transfer him to Scotland Correctional Institution where he would be around offender of the same Blood set and that would be the only way Plaintiff would provide information. Plaintiff Best also refused to go into protective custody status and stated that he would not "check-off" from the yard.

**<u>Second Altercation</u>**

On August 14, 2021, there was a second altercation between Plaintiff Best and Offenders Demarcus Magnum and Lawrence Miller. After Tellys Best was let out of segregation having refused to request protective custody the second altercation was with two offenders different from Offender Leroy Price. The altercation occurred when Plaintiff Best entered a cell that was not his and Offender Demarcus Magnum and Offender Lawrence Miller followed him into that cell where Plaintiff Best was attacked.

**<u>Defendant Joe Edwards</u>**

During the relevant time, Edwards was employed by the North Carolina Department of Public Safety as a Correctional Sergeant at Eastern Correctional Institution in Maury, North Carolina and is still employed in this position. (Edwards Decl. ¶3) At the relevant time, Plaintiff Tellys Best was a level three SRG gang member which is the highest level of SRG status classified by the NC Department of Adult Correction. (Edwards Decl. ¶4)

Edwards never knew or had any knowledge of any risk to Plaintiff Best's safety before he was involved in the altercation on August 14, 2021 with Offenders Demarcus Magnum and Lawrence Miller. Plaintiff Best never stated to Edwards that

he was in fear of his life or needed protective custody in fact he refused protective custody when asked.

Prior to being assaulted, Plaintiff Telly Best was in restrictive housing for a previous incident where he had been fighting with another offender. (Edwards Decl. ¶5) When the 30 day restrictive housing penalty was set to expire, Edwards brought Plaintiff Best into his office and told him that the restrictive housing penalty was ending and he would be transferred back to regular population at Eastern CI. (Edwards Decl. ¶6)

Plaintiff Best told Edwards that he was under the impression that he was being transferred to another facility. Edwards looked in his computer system and there were no pending transfers for this offender and Edwards told him this. (Edwards Decl. ¶7) Edwards even checked with his supervising lieutenant and captain to determine if Plaintiff Best was being transferred and each of them said no. (Edwards Decl. ¶8)

Since the restrictive housing period was ending Plaintiff had the option to request protective custody if he did not want to return to regular population or refuse the housing assignment which would have been a rule violation, placing him back in restrictive housing but also out of regular population. (Edwards Decl. ¶9) Without Plaintiff Best requesting protective custody, he could not remain in segregation since it was a penalty for previously fighting. (Edwards Decl. ¶10)

If an offender feels like he is in danger, he can always request protective custody upon which time a review will be conducted to determine if the offender is in

need of protective custody. (Edwards Decl. ¶11) Plaintiff Best was aware of his ability to request protective custody and he refused. Edwards asked him if he needed or wanted to request protective custody and he said "no". (Edwards Decl. ¶12) If Plaintiff Best would have asked for protective custody he would have not been placed back in regular population. (Edwards Decl. ¶13)

During Edwards' conversation with Plaintiff Best Edwards told him his new housing assignment after being removed from restrictive housing and he could have also refused his assignment which would have been a rule violation placing him back in restrictive housing and not in regular population. (Edwards Decl. ¶14)

Plaintiff Best also did not refuse his housing assignment in regular population. After meeting with Edwards in his office Plaintiff Best also had the opportunity to ask multiple other correctional officers for protective custody while being transferred to regular population which he did not do. (Edwards Decl. ¶15)

It would have been a policy violation for Edwards or any DAC staff to keep Plaintiff in restrictive housing past the required period based on his offense. (Edwards Decl. ¶16)

During Edwards' experience working with offenders, especially high ranking SRG members it is common for them to not request protective status since it would potential make them look weak or not able to take care of themselves. (Edwards Decl. ¶17) Upon information and belief this is possibly why Plaintiff Best did not request protective status even though he was given the opportunity to do so and not return to regular population. (Edwards Decl. ¶18) Plaintiff Best had several options yet he

chose to not to use them and was then taken back to regular population. (Edwards Decl. ¶19)

At no time did Edwards actually know if Plaintiff Best was in danger or who if anyone wanted to cause him harm. (Edwards Decl. ¶20) Edwards would never do anything intentional that would have caused any harm to inmate Telly Best to put him in danger. (Edwards Decl. ¶21)

**Defendant James Ezzell**

During the relevant time, Ezzell was employed by the North Carolina Department of Public Safety as a Correctional Sergeant at Eastern Correctional Institution in Maury, North Carolina but has now since left State Employment for a better job. (Ezzell Decl. ¶3)

At the time Plaintiff Tellys Best was a level three SRG gang member which is the highest level of SRG status. (Ezzell Decl. ¶4)

Prior to being assaulted, Plaintiff Telly Best was in restrictive housing for a previous incident where he had stabbed another offender. (Ezzell Decl. ¶5)

Plaintiff Best was attacked by two different offenders when he came out of segregation. Prior to being assaulted in regular population Plaintiff Telly Best was in restrictive housing as a penalty for a previous incident where he had been fighting with another offender. (Ezzell Decl. ¶5)

While Plaintiff Best was in restrictive housing Ezzell and Roberts spoke with Best about the fight that had sent him to restrictive housing and to gather evidence

to determine whether it was gang related. (Ezzell Decl. ¶6)

At no time did Ezzell tell Plaintiff Best that he would be transferred to another facility. (Ezzell Decl. ¶7) The decision to transfer offenders to other units was outside the scope of Ezzell's employment with NC DAC. (Ezzell Decl. ¶8)

Plaintiff Best refused to request protective custody which would have prevented him from going back to regular population after his time in segregation ended if he felt he was in danger. (Ezzell Decl. ¶9) Without Plaintiff Best requesting protective custody, he could not remain in segregation since it was a penalty for previously fighting and keeping an offender in restrictive housing longer than mandated is against policy. (Ezzell Decl. ¶10)

If an offender feels like he is in danger, he can always request protective custody upon which time a review will be conducted to determine if the offender is in need of protective custody. (Ezzell Decl. ¶11) Plaintiff Best was aware of his ability to request protective custody and he refused. (Ezzell Decl. ¶12) If Plaintiff Best would have asked for protective custody he would have not been placed back in regular population. (Ezzell Decl. ¶13)

Ezzell would never do anything intentional that would have caused any harm to inmate Tellys Best to put him in danger. (Ezzell Decl. ¶14)

**Defendant James Roberts**

During the relevant time, Roberts was employed by the North Carolina Department of Public Safety as a Correctional Lieutenant at Eastern Correctional

Institution in Maury, North Carolina and Roberts is still employed in this position. Currently Roberts serves as one of the gang security risk group ("SRG") officers at Eastern CI. (Robert Decl. ¶3)

Plaintiff Tellys Best was a level three SRG gang member which is the highest level of SRG status. (Robert Decl. ¶5) Prior to being assaulted in regular population Plaintiff Telly Best was in restrictive housing as a penalty for a previous incident where he had been fighting with another offender. (Robert Decl. ¶6)

While Plaintiff Best was in restrictive housing Roberts and Sgt. Ezzell spoke with him about the fight that had sent him to restrictive housing. At no time did Roberts tell Plaintiff Best that he would be transferred to another facility. (Robert Decl. ¶7)

The decision to transfer offenders to other units is outside the scope of Roberts employment with NC DAC. Plaintiff Best refused to request protective custody which would have prevented him from going back to regular population after his time in segregation ended if he felt he was in danger. (Robert Decl. ¶9)

Without Plaintiff Best requesting protective custody, he could not remain in segregation since it was a penalty for previously fighting and keeping an offender in restrictive housing longer than mandated is against policy. (Robert Decl. ¶11)

If an offender feels like he is in danger, he can always request protective custody upon which time a review will be conducted to determine if the offender is in need of protective custody. (Robert Decl. ¶12)

Plaintiff Best was aware of his ability to request protective custody and he

refused. If Plaintiff Best would have asked for protective custody he would have not been placed back in regular population. Roberts would never do anything intentional that would have caused any harm to inmate Telly Best to put him in danger. (Robert Decl. ¶15)

## LEGAL ARGUMENT
## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the "record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, [and] interrogatory answers" show "that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). The moving party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met this burden, the non-moving party cannot rest on bare pleadings alone, but "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted & emphasis removed). A district court should grant summary judgment when the record as a whole could not support a reasonable jury returning a verdict for the non-moving party. *See id.; Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An otherwise properly supported motion for summary judgment will not be defeated by the existence of any factual dispute; only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary

judgment. *See id.* at 248–49. When the nonmoving party fails to make a sufficient showing establishing an essential element of his case and he bears the burden of proof on that issue then there is no genuine issue of material fact, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* at 323.

"Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence in support of' the nonmoving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quotation omitted); *see also Liberty Lobby*, 477 U.S. at 252 (1986) (noting that a mere scintilla of evidence is not sufficient). Thus, a nonmoving party who relies on mere belief or conjecture, or the allegations and denials contained in his pleadings, cannot avoid summary judgment. *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003), *cert. denied*, 541 U.S. 1042 (2004).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"[T]he plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (emphasis added).

"It is the affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club*, 346 F.3d 514, 526 (4th Cir. 2003) (reversed, in part, on other grounds); *Celotex*, 477 U.S. at 323–24, ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.").

## LEGAL ARGUMENT

For the below reasons, Defendants should be granted summary judgment.

### THE ALLEGATIONS IN THE COMPLAINT AND DEFENDANTS FORECAST OF EVIDENCE DEMONSTRATE THAT DEFENDANTS DID NOT VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS. PLAINTIFF HAS FAILED TO ESTABLISH A VIOLATION OF THE EIGHTH AMENDMENT FOR FAILURE TO PROTECT BY DEFENDANTS

**Contours of an Eighth Amendment Failure-to-Protect Claim.**

The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual" punishment, and applies to the states through the Fourteenth Amendment. U.S. Const. amend. VIII; e.g.*, Estelle v. Gamble*, 429 U.S. 97, 101 (1976). The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement, such as adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Additionally, protection from other inmates is a condition-of-confinement that is subject to the strictures of the Eighth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 303, (1991). "[A] prison official violates the Eighth Amendment only when two requirements are met[.]" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The negligent failure to protect an inmate from assaults by other prisoners, or by other prison guards, does not rise to the level of an unconstitutional violation. *Davidson v. Cannon*, 474 U.S. 344, 348 (1986). To show deliberate indifference, a plaintiff must show that the prison official had actual knowledge of an excessive risk to the plaintiff's safety. *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014) (citation omitted). In other words, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Violation of a prison policy by prison officials, however, does not establish a constitutional violation. *See Riccio v. Cty of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights that the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue.").

The first requirement is the deprivation of an objectively "sufficiently serious" basic human need. *Id*. "The second part of inquiry asks whether prison officials subjectively acted with 'deliberate indifference to inmate health or safety,' meaning that they actually knew of and disregarded the inhumane nature of the confinement." *Williams v. Branker,* 462 F. App'x 348, 353 (4th Cir. 2012) *(citing Farmer*, at 837).

### A. Plaintiff Cannot Satisfy the Objective Component of a Deliberate Indifference Claim.

"It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety. *Farmer*, 511 U.S. at 834. Instead, "the deprivation alleged must

be, objectively sufficiently serious." *Id*. "For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id*. (parentheses in original). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). To "demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions[,]' or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Id*. quoting *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993) and citing *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993).

Plaintiff has not presented any evidence tending to suggest that he suffered a sufficiently serious deprivation of rights. Plaintiff instead, relies solely upon his unsupported allegations. Plaintiff has not supported any of his allegations with any record evidence.

### A. Plaintiff Cannot Satisfy the Subjective Component of a Deliberate Indifference Claim.

"'Deliberate indifference is a very high standard - a showing of mere negligence will not meet it.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302, (4th Cir. 2004) (quoting *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999)). "An officer is deliberately indifferent to a substantial risk of harm to a detainee when that officer 'knows of and disregards' the risk." *Parrish*, 372 F.3d at 302 (quoting *Farmer*, 511 U.S. at 837). The knowledge <u>requirement is one of actual knowledge</u>, and simple constructive

knowledge will not suffice. *Farmer*, 511 U.S. at 824, 840-45. Notwithstanding a prison official's knowledge of a substantial risk to an inmate's health, however, the official may be found free from liability if he "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Even if the Court finds Plaintiff had experienced an objectively sufficiently serious harm, the evidence is insufficient to establish the requisite subjective component. The record evidence establishes that neither Defendant was not even aware of any of risk described in Plaintiff's Amended Complaint.

In order for Plaintiff to meet the subjective component of deliberate indifference, he must present evidence that Defendants had actual knowledge of a substantial risk and consciously disregard that risk to the inmate's safety. The record evidence simply does not support such a conclusion.

Plaintiff does not present evidence that any Defendant was actually aware of a risk to Plaintiff's safety and nonetheless refused to act. Plaintiff's unsupported conclusory allegations are insufficient to defeat a properly supported motion for summary judgment. *See Anderson*, 477 U.S. at 256. The record evidence demonstrates that neither Defendant had any knowledge of any risk to Plaintiff's safety, and thus, could not have had actual knowledge of a substantial risk. Therefore, on this evidence Plaintiff is unable to establish the subjective component of his deliberate indifference claim.

Plaintiff cannot show that Defendants were actually aware of any excessive risks to Plaintiff's physical safety posed by other offenders. Moreover, Plaintiff cannot

show that Defendants disregarded those risks despite such knowledge. Accordingly, Plaintiff will be unable to present credible evidence to support the subjective component of his deliberate indifference claim. Thus, no reasonable jury could find in favor of Plaintiff on his deliberate indifference claim. Therefore, there is no genuine dispute of material fact and Defendants are entitled to summary judgment as a matter of law.

**DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

The affirmative defense of qualified immunity shields Defendants from claims for monetary damages. Prison officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects all but plainly incompetent corrections officers or those who knowingly violate the law. *E.g., Winfield v. Bass*, 106 F.3d at 531. The *Harlow* objective standard "raises questions concerning the state of the law at the time of the challenged conduct--questions that can normally be resolved on summary judgment." *Crawford-El v. Britton*, 523 U.S. 574, 590 (1998). Qualified immunity does not depend on the officer's subjective state of mind. *Wiley v. Doory,* 14 F.3d 993, 995(4th Cir. 1994).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a rigid, two-step analysis to resolve qualified immunity claims. A trial court was first to decide (1) whether the facts alleged or shown by the plaintiff made out a violation of

a constitutional right; and (2) if so, whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* at 201. This rigid analysis was modified by the Supreme Court in *Pearson v. Callahan*, 555 U.S. 223, 172 L. Ed. 2d 565 (2009). *Pearson* held that courts were free "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances." 555 U.S. at 232, 172 L. Ed. 2d at 576; *accord Cloaninger v. McDevitt*, 555 F.3d 324, 331 n.9 (4th Cir. 2009).

Thus, the first prong articulated in *Saucier* weighs in favor of Defendants. Moreover, even if Plaintiff could establish a constitutional violation, which the Defendants assert he cannot, Defendants would nonetheless be entitled to qualified immunity. The record contains no evidence that can support the notion that a reasonable officer in the position of Defendants would have known that their conduct violated clearly established rights of Plaintiff. Thus, the second prong articulated in *Saucier* weighs in favor of Defendants. Therefore, Defendants are entitled to qualified immunity and judgment as a matter of law.

Here, for the reasons stated above, Plaintiff cannot demonstrate any violation of his constitutional rights. Thus, the first prong articulated in *Saucier* weighs in favor of Defendants. Moreover, even if Plaintiff could establish a constitutional violation, which the Defendants assert he cannot, Defendants would nonetheless be entitled to qualified immunity. The record contains no evidence that can support the notion that a reasonable officer in the position of Defendants would have known that their conduct violated clearly established rights of Plaintiff. Thus, the second prong

articulated in *Saucier* weighs in favor of Defendants. Therefore, Defendants are entitled to qualified immunity and judgment as a matter of law.

This Court should exercise its discretion and conclude no constitutional violation has been shown and, therefore, qualified immunity shields Defendants from Plaintiff's claims for monetary damages. For this alternative reason, this action should be dismissed.

## DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW AS TO ANY CLAIMS AGAINST THEM IN THEIR OFFICIAL CAPACITIES.

To the extent Plaintiff is attempting to sue Defendants in their official capacities these claims fail. A lawsuit filed against a state official in his or her official capacity is essentially an action against the state. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The law is clear, neither a state nor an official acting in an official capacity is a "person" subject to suit under 42 U.S.C. § 1983. Furthermore, the Eleventh Amendment generally bars claims against states in state or federal courts. *Alden v. Maine*, 527 U.S. 706, 712-13 (1999). While Congress can abrogate the states' sovereign immunity, it has not done so with regard to claims under 42 U.S.C. § 1983. *See Quern v. Jordan*, 440 U.S. 332, 343 (1979). Moreover, "[t]he State of North Carolina has not waived its sovereign immunity for suit under § 1983[.]" *Frazier v. Murray*, No. 4:96-CV-168-BO(1), 1997 U.S. Dist. LEXIS 22039, at *9 (E.D.N.C. Dec. 15, 1997) Accordingly, Plaintiff cannot maintain this Section 1983 action against Defendants in their official capacities. Therefore, Defendants are entitled to summary judgment as to Plaintiff's claims against them in their official capacities.

## CONCLUSION

For the foregoing reasons, this Court should grant summary judgment granting summary judgment in favor of Defendants and dismiss Plaintiff's action.

Respectfully submitted, this 10th day of November, 2023.

        JOSHUA H. STEIN
        Attorney General

        /s/ Bryan G. Nichols
        Bryan G. Nichols
        Special Deputy Attorney General
        N.C. State Bar No. 42008
        N.C. Department of Justice
        Public Safety Section
        P. O. Box 629
        Raleigh, North Carolina 27602-0629
        Telephone: (919) 716-6568
        Facsimile: (919) 716-6761
        E-Mail: bnichols@ncdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, I electronically filed the foregoing **Memorandum of Law in Support of Motion for Summary Judgment** with the Clerk of the Court using the CM/ECF system. I also certify that, on this date, I served a copy of same upon the Plaintiff, a *non* CM/ECF participant via first-class regular United States Mail addressed as follows:

    Tellys Best
    5501 Black Maple Drive
    Raleigh, NC 27616

Plaintiff, *pro se*

DATED: This the 10th day of November 2023.

<u>/s/ Bryan G. Nichols</u>
Bryan G. Nichols
Special Deputy Attorney General
